# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL CASE NO. 3:10-CV-637-MOC-DCK

| | |
|---|---|
| WALTER WILKINS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER IS BEFORE THE COURT** on "Plaintiff's Motion For Summary Judgment" (Document No. 15) and "Defendant's Motion For Summary Judgment" (Document No. 17). This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b)(1)(B). After careful consideration of the written arguments, administrative record, and applicable authority, the undersigned will respectfully recommend that "Plaintiff's Motion For Summary Judgment" be denied; that "Defendant's Motion For Summary Judgment" be denied; and that the Commissioner's decision be vacated and this matter be remanded for further consideration by an Administrative Law Judge.

## I. BACKGROUND

Plaintiff Walter Wilkins ("Plaintiff"), through counsel, seeks judicial review of an unfavorable administrative decision on his application for disability benefits. (Document No. 1). On October 2, 2007, Plaintiff filed an application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 405 *et seq.*, and for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. § 1383 *et seq.*, alleging an inability to work due to a disabling condition beginning December 28, 2006. (Transcript

of the Record of Proceedings ("Tr.") 133, 138).[1]  The Commissioner of Social Security (the "Commissioner" or "Defendant") denied Plaintiff's application initially on January 24, 2008 (Tr. 65), and again after reconsideration on July 17, 2008. (Tr. 77, 81).  Plaintiff filed a written request for a hearing on October 14, 2008.  (Tr. 87-94).

On November 19, 2009, Plaintiff appeared and testified at a hearing before Administrative Law Judge Richard L. Leopold (the "ALJ").  (Tr. 29-49).  On January 8, 2010, the ALJ issued an unfavorable decision denying Plaintiff's claim.  (Tr. 8-21).  Plaintiff filed a request for review of the ALJ's decision on March 9, 2010, which was denied by the Appeals Council on October 19, 2010.  (Tr. 1-7).  The ALJ decision thus became the final decision of the Commissioner when the Appeals Council denied Plaintiff's review request.  Id.

Plaintiff's "Complaint" seeking a reversal of the ALJ's determination was filed in this Court on December 15, 2010.  (Document No. 1).  "Plaintiff's Motion For Summary Judgment" (Document No. 15) and "...Memorandum In Support Of Motion For Summary Judgment" (Document No. 16), were filed on August 11, 2011; and "Defendant's Motion For Summary Judgment" (Document No. 17) and "...Memorandum In Support Of Motion For Summary Judgment" (Document No. 18) were filed on October 14, 2011.  The pending motions are ripe for disposition, and therefore, a memorandum and recommendation to the Honorable Max O. Cogburn, Jr. is appropriate.

---

[1] A previous decision by an ALJ has already determined that Plaintiff was not disabled through October 16, 2007.  (Tr. 11, 14, 50-60).  The ALJ here opined that he gave "great weight to the findings of the prior decision."  (Tr. 11).

## II.  STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to:  (1) whether substantial evidence supports the Commissioner's decision;  and (2) whether the Commissioner applied the correct legal standards. Richardson v. Perales, 402 U.S. 389, 390 (1971);  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is supported by substantial evidence. Hays, 907 F.2d at 1456 (4th Cir. 1990); see also, Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986);  Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).  "Substantial evidence has been defined as 'more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. Hays, 907 F.2d at 1456;  King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case *de novo* when reviewing disability determinations.");  Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion.").  Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III.  DISCUSSION

The question before the ALJ was whether Plaintiff was under a "disability," as that term of art is defined for Social Security purposes, at any time between December 28, 2006, and the date of his decision.[2]  (Tr. 12).  To establish entitlement to benefits, Plaintiff has the burden of proving that he was disabled within the meaning of the Social Security Act.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).  The ALJ concluded that Plaintiff was not under a disability at any time from December 28, 2006, through the date of his decision, January 8, 2010.  (Tr. 11-18).

The Social Security Administration ("SSA") has established a five-step sequential evaluation process for determining if a person is disabled.  20 C.F.R. § 404.1520(a).  The five steps are:

    (1)    whether claimant is engaged in substantial gainful activity - if yes, not disabled;

    (2)    whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509 - if no, not disabled;

    (3)    whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1, and meets the duration requirement - if yes, disabled;

    (4)    whether claimant has the residual functional capacity ("RFC") to perform her/his past relevant work - if yes, not disabled; and

---

[2] Under the Social Security Act, 42 U.S.C. § 301, *et seq.*, the term "disability" is defined as an: inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.  Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting  42 U.S.C. § 423(d)(1)(A)).

>    (5)   whether considering claimant's RFC, age, education, and work experience he/she can make an adjustment to other work - if yes, not disabled.

20 C.F.R. § 404.1520(a)(4)(i-v). In this case, the ALJ determined at the fifth step that Plaintiff was not disabled. (Tr. 16-17).

Specifically, the ALJ first concluded that Plaintiff had not engaged in any substantial gainful activity since December 28, 2006, his alleged disability onset date. (Tr. 12). At the second step, the ALJ found that Plaintiff's schizophrenia and intermittent explosive disorder were severe impairments. (Tr. 13).[3] At the third step, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1. Id.

Next, the ALJ assessed Plaintiff's RFC and found that:

> . . . [S]ince the claimant has no "severe" physical impairment, he retains the physical residual functional capacity to meet the exertional and physical non-exertional demands of work at any exertional level. Additionally, I further find that he retains the mental residual capacity to meet the mental demands of unskilled work. Specifically, I find that the claimant has not met his burden of establishing that he is unable to perform the simple, routine, repetitive tasks associated with unskilled work.

(Tr. 15). In making his finding, the ALJ considered Plaintiff's testimony regarding his impairments' severity and resulting functional limitations, but deemed this testimony not credible. (Tr. 15).

---

[3] The determination at the second step as to whether an impairment is "severe" under the regulations is a *de minimis* test, intended to weed out clearly unmeritorious claims at an early stage. See Bowen v. Yuckert, 482 U.S. 137 (1987).

At the fourth step, the ALJ found that Plaintiff did not have any past relevant work. (Tr. 16). At the fifth and final step, the ALJ considered the testimony of a vocational expert ("VE") and "the claimant's age, education, work experience, and residual functional capacity." Id. The ALJ determined that the VE's testimony was "not relevant" on this issue and found that "Section 204.00 of the Medical-Vocational Guidelines directs a conclusion that the claimant is not 'disabled.'" Id. Therefore, the ALJ concluded that Plaintiff was not under a "disability," as defined by the Social Security Act, at any time between December 28, 2006, and the date of his decision, January 8, 2010. (Tr. 16-17).

Plaintiff on appeal to this Court makes the following assignments of error: (1) that the ALJ committed reversible error in finding that Plaintiff was non-compliant with treatment and that Plaintiff's alleged non-compliance was good reason for not finding Plaintiff disabled; and (2) that a finding of disability is warranted due to Plaintiff's inability to perform continuous, substantial gainful activity. (Document No. 16). The undersigned will discuss these contentions in turn.

### A. Plaintiff's Compliance With Treatment

In his first assignment of error, Plaintiff contends that the ALJ committed reversible error by improperly relying on non-compliance with treatment as a basis for denying his benefits. (Document No. 16, p.6). Plaintiff specifically argues that the ALJ violated Social Security Ruling ("SSR") 82-59 by failing to determine "whether or not failure to follow prescribed treatment is justifiable." Id. at 7.

SSR 82-59 explains the circumstances under which the SSA may deny benefits to an individual on the basis that the claimant has failed to follow prescribed treatment that could be expected to restore his ability to work. SSR 82-59 states in pertinent part:

> An individual who would otherwise be found to be under a disability, but who fails without justifiable cause to follow treatment prescribed by a treating source which the Social Security Administration (SSA) determines can be expected to restore the individual's ability to work, cannot by virtue of such "failure" be found to be under a disability. . . . Where SSA makes a determination of "failure," a determination must also be made as to whether or not failure to follow prescribed treatment is justifiable.
>
> . . .
>
> The claimant or beneficiary should be given an opportunity to fully express the specific reason(s) for not following the prescribed treatment. Detailed questioning may be needed to identify and clarify the essential factors of refusal. The record must reflect as clearly and accurately as possible the claimant's or beneficiary's reason(s) for failing to follow the prescribed treatment.

SSR 82-59, 1982 WL 31384 at *1-2.

Plaintiff contends that although the ALJ alleged he was non-compliant for failing to take Risperdal, the ALJ failed to ask any questions regarding the alleged non-compliance. (Document No. 16, p.6). Plaintiff also contends that he was never advised that his alleged non-compliance could result in the denial of benefits. (Document No. 16, p.8). SSR 82-59 provides that a claimant must be informed of the effect the failure to take prescribed treatment might have on his eligibility for benefits and given the opportunity to undergo treatment or show justifiable cause for failing to do so. SSR 82-59, 1982 WL 31384 at *5. Plaintiff concludes that by failing to develop evidence as to whether Plaintiff's non-compliance was justifiable, the ALJ failed to comply with SSR 82-59 and committed reversible error. (Document No. 16, pp.7, 11).

Defendant contends that SSR 82-59 is inapplicable here because the ALJ only considered Plaintiff's non-compliance with treatment to assess his credibility, and did not otherwise find him to be under a disability as required by the ruling. (Document No. 18, p.4). In the alternative,

7

Defendant argues that even if SSR 82-59 did apply, the ALJ was not required to further investigate Plaintiff's non-compliance because it was documented in the treatment notes. Id. Moreover, Defendant asserts that to the extent Plaintiff alleges he could not afford treatment, the record shows that his prescriptions were paid for through Medicaid. Id.

In determining "whether, despite the presence of 'severe' impairments, the claimant retains a residual functional capacity . . . consistent with the performance of other jobs which exist in significant numbers in the national economy," the ALJ "considered the claimant's subjective complaints, daily activities, statements made by treating and examining physicians, the medication the claimant takes and side effects from medication." (Tr. 14). The ALJ began his analysis of RFC by stating that Plaintiff's "testimony as to the specific intensity, persistence, and limiting effects of his subjective symptoms [was] not persuasive in view of the inconsistencies in the record." (Tr. 14). The ALJ opined that Plaintiff's "severe impairments" could be expected to produce at least some of the symptoms alleged by Plaintiff. Id.

The ALJ concluded based on the medical evidence that it was "without question" that Plaintiff's suggested course of treatment - taking the medication Risperdal - was "effective in controlling the claimant's symptoms." Id. The ALJ specifically noted that "a disorder that is controllable by medication is not 'disabling.'" Id. (citing Gross v. Heckler, 785 F.2d 1163 (4th Cir. 1986). The ALJ then further concluded that "on multiple occasions, the claimant has been non-compliant with his medication, and that he has offered no sufficient explanation for his non-compliance." Id.

Based on the foregoing, it appears that the ALJ determined, at minimum, that the evidence supported a finding that Plaintiff was not disabled, *if* he was compliant with his medication. It is

less certain that, as Defendant contends, the ALJ only considered Plaintiff's non-compliance in the context of assessing his credibility. (Document No. 18, p.4).

As noted above, the ALJ's decision concluded that Plaintiff had been "non-compliant with his medication" and that he had "offered no sufficient explanation for his non-compliance." (Tr. 14). However, the undersigned is not persuaded that the record here has been fully developed to "reflect as clearly and accurately as possible the claimant's . . . reason(s) for failing to follow the prescribed treatment." SSR 82-59, 1982 WL 31384 at *5. In fact, the ALJ's examination of Plaintiff shows that Plaintiff testified that he was compliant with treatment, and that the ALJ declined to challenge Plaintiff's assertion of compliance. (Tr. 36-42). For example, the hearing transcript includes the following exchange:

> Q. How often do you get to see a doctor?
>
> A. I see my doctor at least once, or twice, or three times a month when she's available; and if she's not available, I see one of the RN nurses, and they talk to me, and make sure my medication is doing good and ask me how I'm feeling and what's going on. So, I do keep my appointments, and this treatment has been a great help to me, and I wanted to continue to do this treatment, because I realize I do have problems. I do need help. And CMC has been a great help to me with my medication. The Risperdal is helping me, too.
>
> Q. And during a regular day, what, what do you do?

(Tr. 38-39).

Both Plaintiff and the ALJ assert that the record shows that Plaintiff was unable to afford Risperdal, but the ALJ certainly failed to explore at the hearing why Plaintiff had allegedly failed to follow prescribed treatment, or whether he could afford treatment and had exhausted all sources

9

that might fund such treatment. (Tr. 12; Document No. 16, p.7).  See also, Gordon v. Schweiker, 725 F.2d 231, 237 (4th Cir. 1984) ("inability to pay for treatment is a good reason for a refusal to follow prescribed treatment. . . . the claimant must show that he has exhausted all free or subsidized sources of treatment and document his financial circumstances before inability to pay will be considered good cause. . . . before a person is denied benefits for failure to follow prescribed treatment, he will be afforded an opportunity to undergo the prescribed treatment or to show justifiable cause for failing to do so");  and Preston v. Heckler, 769 F.2d 988, 990 (4th Cir. 1985) ("we hold that the burden of producing evidence concerning unjustified noncompliance lies with the Secretary").

In short, it is unclear what weight, if any, the ALJ placed on Plaintiff's alleged non-compliance in reaching his decision that Plaintiff was not disabled. After careful consideration of the ALJ's decision, the transcript of the hearing, the parties' briefs, and the medical evidence, the undersigned finds that the ALJ's ultimate conclusion regarding disability may be correct;  however, the ALJ's decision is not adequately supported by substantial evidence. As such, the undersigned will respectfully recommend that this matter be remanded to an ALJ for further consideration and appropriate development of the record.

### B. **Plaintiff's Inability to Perform Continuous Employment**

Plaintiff also argues that the ALJ's determination that Plaintiff is not disabled is unwarranted, based on Plaintiff's inability to sustain employment for substantial periods of time. (Document No. 16, pp. 8-11). Under the circumstances, the undersigned will decline to express an opinion as to this argument, and instead, will respectfully recommend that this issue also be considered on remand.

## IV.  CONCLUSION

The undersigned finds that there is not "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and thus substantial evidence does not support the Commissioner's decision. Richardson v. Perales, 402 U.S. 389, 401 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005).  As such, the undersigned will recommend that the Commissioner's decision be vacated, and that the matter be remanded.

## V.  RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that: "Plaintiff's Motion For Summary Judgment" (Document No. 15) be **DENIED**;  "Defendant's Motion For Summary Judgment" (Document No. 17) be **DENIED**;  and the Commissioner's determination be **VACATED** and this matter be **REMANDED** for further consideration by an Administrative Law Judge.

## VI.  TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within fourteen (14) days of service of same.  Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2).  Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court.  Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005).  Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal.  Diamond, 416 F.3d at 316;  Page

v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenhour, 889 F.2d 1363, 1365 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), reh'g denied, 474 U.S. 1111 (1986).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties and the Honorable Max O. Cogburn, Jr..

**IT IS SO RECOMMENDED**.

Signed: November 22, 2011

David C. Keesler
United States Magistrate Judge